UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

POCHLY JEAN-BAPTISTE,

                              Petitioner,

            - against -

DALE ARTUS, Superintendent,
Clinton Correctional Facility,

                              Respondent.

09 Civ. 5920 (ER) (PED)

**REPORT AND
RECOMMENDATION**

TO:   THE HONORABLE EDGARDO RAMOS,
      UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Pochly Jean-Baptiste ("Petitioner") seeks, by his *pro se* petition, a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Petitioner was convicted on January 13, 2005, after a trial by jury, of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree in Rockland County Supreme Court (Kelly, J.). He was sentenced to an indeterminate term of from twenty-five years to life for the murder conviction, as well as concurrent terms of ten years and five years, respectively, on the second and third degree weapon possession convictions. The court also imposed a five-year period of post-release supervision.

This Petition comes before me pursuant to an Order of Reference dated July 10, 2009. See Dkt. No. 5. For the reasons set forth below, I respectfully recommend that the Petition be **DENIED**.

## II. BACKGROUND[1]

---

[1] Unless otherwise indicated, the information within this section is taken from a review of the Petition ("Pet."), Dkt. No. 2, and supporting memorandum of law ("Pet. Mem."), Dkt. No. 3;

**A.**     **The Crime**

Jean LaForest died of gunshot wounds sustained during an encounter with Petitioner and three friends—Steve Innocent, Widzer Beauvais, and Kenny Welch—who had been riding around Spring Valley, New York, on the afternoon of January 17, 2004, in Innocent's car.

Innocent, Beauvais, and Welch each testified that Petitioner shot LaForest following an argument concerning a recent incident during which LaForest had accidentally discharged a firearm during a visit to the apartment where Petitioner lived with his family.  However, there was also evidence that Innocent and Beauvais had themselves been involved in a recent altercation with LaForest at a basketball game; LaForest had pointed a gun at Innocent and Beauvais, who had in turn reported the incident to the police.

**B.**     **The Police Investigation, Arrest, and Indictment**

On January 18, 2004, Innocent, Beauvais, and Welch were questioned by Spring Valley police officers about the events of January 17.  Each witness told the police that Petitioner had shot LaForest.  Police obtained and analyzed records for Petitioner's cell phone and traced Petitioner to Florida.  The police questioned four of Petitioner's Florida-based acquaintances, Sony Jean, Louis LaRouche, Miguel Marin, and Yves Sanon, each of whom reported that Petitioner had made statements regarding his having been involved in a shooting in New York and his concern that the police were looking for him in connection with that shooting.  On February 20, 2004, the police arrested Petitioner in Miami, whereupon Petitioner was extradited to New York.

---------------------------

Respondent's affirmation in answer ("Ciganek Aff.") and supporting memorandum of law ("Resp. Mem."), Dkt. No. 17; Petitioner's direct appeal brief ("Pet. App. Br."), Ciganek Aff., Ex. K; and Respondent's direct appeal brief, Ciganek Aff., Ex. L ("Resp. App. Br.").

The Rockland County Grand Jury returned an indictment charging Petitioner with one count of murder in the second degree, in violation of N.Y. Penal Law § 125.25(1);[2] one count of criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03(2);[3] and one count of criminal possession of a weapon in the third degree, in violation of N.Y. Penal Law § 265.02(4).[4]  See Ciganek Aff., Ex. A (Indictment).

## C.    The Pretrial Proceedings Regarding Petitioner's Appointed Counsel

Defense attorney Barry Weiss was appointed to represent Petitioner.  On May 5, 2004, during a pretrial proceeding in an unrelated case involving a different defendant—one Ali Grant—Weiss advised the trial court that his representation of Grant presented a conflict of interest with respect to his representation of Petitioner because Weiss had learned that Grant intended to cooperate in Petitioner's prosecution in an effort to secure a reduced sentence.[5]  See Ciganek Aff., Ex. C (May 5, 2004 Transcript) at 4–6.  The court advised Grant that this posed an "actual conflict" for Weiss and granted Weiss's application to be relieved as Grant's attorney. Id. at 6–7.  Thereafter, Weiss argued that the conflict would not prevent him from continuing to

---

[2] "A person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person . . . ."  N.Y. Penal Law § 125.25(1).

[3] "A person is guilty of criminal possession of a weapon in the second degree when . . . [h]e possesses a loaded firearm . . . ."  N.Y. Penal Law § 265.03(2), amended by 2005 N.Y. Sess. Laws ch. 764, § 3 (2005).

[4] "A person is guilty of criminal possession of a weapon in the third degree when . . . [s]uch person possesses any loaded firearm . . . . [except] if such possession takes place in such person's home or place of business."  N.Y. Penal Law § 265.02(4), repealed by 2006 N.Y. Sess. Laws ch. 742, § 1 (2006).

[5] According to the prosecution, "Grant had direct admissions from [Petitioner] that [he] did in fact commit the murder for which he was charged."  Ciganek Aff., Ex. B (May 19, 2004 Motion to Disqualify) at 6 (unpaginated).

3

represent Petitioner if the prosecution determined that it would not in fact have Grant testify against Petitioner. Id. at 9–10. The court disagreed and suggested that this "actual conflict" was "non-waiveable," and that Weiss could not "continue representing" Petitioner. Id. at 10. The court noted that it had not yet received a formal motion from either party on this issue but would "make that determination" on its own in the event that it did not receive a formal motion. Id.

On May 19, 2004, the prosecution moved to disqualify Weiss from representing Petitioner. See Ciganek Aff., Ex. B. Weiss did not submit any opposition to this motion. See Ciganek Aff., Ex. E (Disqualification Order). On or about June 2 or June 4, 2004,[6] the court issued an order disqualifying Weiss. Id. In this order, the court found that, "[w]hen faced with prospective conflicts involving counsel and a prosecution witness, the Court may disqualify counsel." Id. at 3. The court noted that Grant would be an "'important' witness" at Petitioner's trial, given that he would "testify concerning admissions allegedly made by" Petitioner, and that Weiss's ability to cross-examine Grant would "undoubtedly" be affected by his prior representation of Grant, given that the attorney-client privilege might protect communications between Grant and Weiss that would otherwise "have value in attacking Mr. Grant's credibility." Id. at 4. Accordingly, the court determined that, "[b]ased upon the circumstances of Mr. Weiss' prior representation of Mr. Grant, it is very likely his ability to adequately represent [Petitioner] will be hampered" and, therefore, the court was obligated to relieve Weiss and assign new counsel to represent Petitioner. Id. at 5. On June 7, 2004, the court informed Petitioner on the record that Weiss had been relieved as counsel, assigned Anthony Dellicarri to represent

---

[6] Due to an apparent typographical error, the trial court's order was dated July 4, 2002. Given that Petitioner was assigned new counsel on the record on June 7, 2004, the parties contend that June 2, 2004 or June 4, 2004 is the most likely date that the trial court actually issued the order.

4

Petitioner at trial, and noted that Dellicarri would explain the situation to Petitioner.  See Ciganek Aff., Ex. D (June 7, 2004 Transcript).

**D.**     **The Trial and Sentencing**

Petitioner's case was tried in October 2004.  At trial, the three eyewitnesses and the four Florida witnesses all testified against Petitioner.  Each of these witnesses was permitted to testify about statements Petitioner had made concerning the incident at Petitioner's apartment during which LaForest accidentally fired a gun, as well as the fact that Petitioner's stepfather ordered Petitioner to move out of the apartment as a result.  These statements were admitted to show Petitioner's motive to kill LaForest.

Additionally, the trial court admitted expert testimony by a firearms examiner and a medical examiner at Petitioner's trial.  During his testimony, the firearms examiner produced a photocopy of a photograph depicting a magnified image of two bullet casings that had been recovered from the scene.  The examiner had inadvertently failed to bring the original photograph to trial, and the court sustained an objection to the exhibit on best evidence grounds.  However, the court went on to permit the examiner to show the photocopy to the jury and to use the photocopy to illustrate his testimony.  The trial court also permitted the medical examiner, over objection, to testify regarding the potential position of LaForest's shooter based on her examination of the bullet wounds to LaForest's head.

The jury returned a verdict of guilty on all charges on October 19, 2004.  Petitioner was sentenced on January 13, 2005 to an indeterminate term of twenty-five years to life for the murder conviction, as well as concurrent terms of ten years and five years, respectively, on the second and third degree weapon possession convictions.  The court also imposed a five-year period of post-release supervision.

E.      **The Direct Appeal**

Petitioner appealed his convictions to the New York State Appellate Division, Second

Department, and raised the following claims:

(1)     the trial court violated Petitioner's constitutional right to counsel of his choice, as
        well as his right to be present for all material stages of the criminal proceedings,
        when, outside his presence, it disqualified Weiss from representing him, see Pet.
        App. Br. at 25–32;

(2)     "a cumulation of errors" at Petitioner's trial—including the trial court's having
        admitted hearsay testimony regarding Petitioner's motive, having permitted the
        firearms examiner to show and describe a photocopy to the jury, and having
        permitted the medical examiner to testify regarding the shooter's
        position—"rendered the trial fundamentally unfair," see Pet. App. Br. at 33–53
        (typeface altered from original);

(3)     the jury's verdict was against the weight of the evidence, see Pet. App. Br. at
        54–63; and

(4)     the trial court's imposition of the maximum sentence was excessive, see Pet. App.
        Br. at 64.

On May 27, 2008, the Appellate Division affirmed Petitioner's conviction.  See People v.

Jean-Baptiste, 858 N.Y.S.2d 388 (App. Div. 2008).  The Appellate Division determined that

Petitioner "was not deprived of his right to counsel of his choice or of his right to be present at

all material stages of his trial by the trial court's decision to disqualify defense counsel, which

allegedly was made outside of his presence." Id. at 388.  The court noted that a defendant's right

to counsel of choice is "not absolute and may properly be circumscribed where, as here, defense

counsel's continued representation of the defendant would present a clear conflict of interest."

Id. at 388–89.  The court also found that "the defendant's presence during any proceeding

regarding disqualification of defense counsel. . . . was not required," since Weiss "could not

have continued to represent [him] under the circumstances of this case" and Petitioner, therefore,

would not have had a meaningful opportunity to affect the court's decision on this issue even if

he had been present.  Id. at 389.  The court further determined that there was "no merit" to

6

Petitioner's "contention that the trial court erred in permitting the prosecution to elicit hearsay testimony from several of their witnesses relating to the defendant's motive" because "[t]his testimony was admissible under the 'state-of-mind' exception to the hearsay rule." Id.  The court also found that Petitioner's "contentions regarding other alleged trial errors are also without merit," that the "verdict of guilt was not against the weight of the evidence," and that the "sentence imposed was not excessive." Id.

Petitioner sought leave to appeal the Appellate Division's decision on his claims that (1) the trial court's disqualification of his counsel deprived him of his rights to counsel of choice and to be present at all material stages of the proceedings, and (2) that the trial court's "erroneous admission of evidence" could "in no way . . . be considered harmless error as, without the improperly admitted evidence, it is likely the outcome of the trial would have been different." Ciganek Aff., Ex. O (Request for Leave to Appeal) at 1 (unpaginated).  Petitioner's request noted that his "weight of the evidence and excessive sentence" claims "were questions of fact" and "thus are not included in this application." Id. at 5.  The New York Court of Appeals denied Petitioner's request for leave to appeal on August 29, 2008.  People v. Jean-Baptiste, 11 N.Y.3d 737 (2008) (table opinion).  Petitioner's conviction became final on November 27, 2008.[7]

**F.      The _Habeas Corpus_ Proceedings**

---

[7] A judgment of conviction becomes final when the time to file a petition for a writ of _certiorari_ to the United States Supreme Court has expired, or ninety days after the New York Court of Appeals denies leave to appeal.  See 28 U.S.C. § 2101(d); see, e.g., Brown v. Greiner, 409 F.3d 523, 534 n.3 (2d Cir. 2005).  In this case, the Court of Appeals denied Petitioner leave to appeal on August 29, 2008.  Ninety days thereafter fell on November 27, 2008.

On or about June 11, 2009,[8] Petitioner submitted this Petition seeking a writ of *habeas corpus*. See Pet; Pet. Mem. On or about August 24, 2010,[9] Petitioner requested that the Court stay the proceedings to afford him an opportunity to exhaust claims of ineffective assistance of trial counsel and judicial misconduct in state court. See Dkt. No. 18. On September 23, 2010,[10] the Court denied this request on the ground that Petitioner's proposed claims were time-barred and did not relate back to the date of filing of the Petition. See Dkt. No. 19.

A liberal reading of Petitioner's filings reveals that he raises the following claims in his Petition for *habeas* review:[11]

(1)     the trial court's disqualification of Petitioner's attorney outside Petitioner's presence deprived Petitioner of his constitutional rights (a) to counsel of his choice and (b) to be present for all material stages of the proceedings, see Pet. at 2, Pet. Mem. at 3–9;

(2)     the cumulative effect of errors during Petitioner's trial—including the trial court's (a) having admitted improper hearsay evidence regarding motive, (b) having permitted the prosecution to "misuse" expert evidence, and (c) having provided erroneous instructions to the jury on these issues—deprived Petitioner of his constitutional right to a fair trial, see Pet. at 2, Pet. Mem. at 9–25; and

(3)     the jury's verdict was against the weight of the evidence, see Pet. at 2, Pet. Mem. at 25–32.

---

[8] The Petition was dated June 11, 2009, received by the Southern District of New York *Pro Se* Office on June 16, 2009, and filed on June 29, 2009. See Pet. Respondent does not dispute that the Petition was timely filed. See 28 U.S.C. § 2244(d) (setting forth limitation period for *habeas* petitions).

[9] Petitioner's letter was dated August 24, 2010, received by the *Pro Se* Office on August 31, 2010, and docketed by the Court on September 8, 2010. See Dkt. No. 18.

[10] Due to a typographical error, the order denying Petitioner's request for a stay was dated September 23, 2009. See Dkt. No. 19.

[11] See Haines v. Kerner, 404 U.S. 519, 520–21 (1972) (*per curiam*) (*pro se* allegations contained in *habeas corpus* petition should be liberally construed); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (noting that "pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they suggest") (internal quotation marks omitted) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## III. DISCUSSION

### A.  Applicable Law on *Habeas Corpus* Review

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claims in accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized below.

### 1.  *Timeliness Requirement*

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of limitations.  See 28 U.S.C. § 2244(d).  The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply.  See id. § 2244(d)(1).  Under the statute, the limitations period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition.  See id. § 2244(d)(2).  The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct

9

review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation marks omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Id.

2.    *Exhaustion Requirement*

10

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim. See Rose v. Lundy, 455 U.S. 509, 518–19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (internal citation omitted) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005). A claim may be "fairly

11

presented" to the state courts, therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation marks omitted). "In such a case, a petitioner no longer has remedies available in the courts of the State within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (internal quotation marks omitted). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in

the courts of the State."); <u>see also, e.g.</u>, <u>Padilla v. Keane</u>, 331 F. Supp. 2d 209, 216 (S.D.N.Y.

2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

      3.     <u>*Procedural Default*</u>

Even where an exhausted and timely *habeas* claim is raised, comity and federalism

demand that a federal court abstain from its review when the last-reasoned state court opinion to

address the claim relied upon "an adequate and independent finding of a procedural default" to

deny it. <u>Harris</u>, 489 U.S. at 262; <u>see also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 730 (1991); <u>Ylst</u>

<u>v. Nunnemaker</u>, 501 U.S. 797, 803 (1991); <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 126

(2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on

state law. <u>Jimenez v. Walker</u>, 458 F.3d 130, 138 (2d Cir. 2006) (citing <u>Coleman</u>, 501 U.S. at

740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the

state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (quoting <u>Ford v. Georgia</u>,

498 U.S. 411, 423–24 (1991)).

      4.     <u>*AEDPA Standard of Review*</u>

Before a federal court can determine whether a petitioner is entitled to federal *habeas*

relief, the court must determine the proper standard of review under AEDPA for each of the

petitioner's claims. 28 U.S.C. § 2254(d)(1)–(2). This statute "modifie[d] the role of federal

habeas courts in reviewing petitions filed by state prisoners," and imposed a more exacting

standard of review. <u>Williams v. Taylor</u>, 529 U.S. 362, 402 (2000). For petitions filed after

AEDPA became effective, federal courts must apply the following standard to cases in which the

state court adjudicated on the merits of the claim:

                An application for a writ of habeas corpus on behalf of a person in custody

13

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)–(2).  The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).  Where the state court "did not reach the merits" of the federal claim, however, "federal habeas review is not subject to the deferential standard that applies under AEDPA . . . .  Instead, the claim is reviewed de novo."  Cone v. Bell, 556 U.S. 449, 129 S. Ct. 1769, 1784 (2009); see § 2254(d).

Under the first prong of the AEDPA deferential standard, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct.  28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  § 2254(e)(1).

14

**B.**    <u>Analysis of Petitioner's Claims</u>

1.    <u>*Right to Counsel of Choice and Right to Be Present (Claim 1)*</u>

Petitioner argues that (1) his "fundamental constitutional right to be represented by counsel of his choice was violated by the court's disqualification of his original defense attorney without his knowledge, and without either his or defense counsel's consent," and (2) "the fact that the substitution of counsel took place outside of Petitioner's presence compromises a separate violation of his constitutional rights," namely his right to be present at all material stages of the proceedings.  Pet. Mem. at 3; <u>see also</u> <u>id.</u> at 3–9.  Respondent does not dispute that Petitioner exhausted this claim in the state courts,[12] but argues that "Petitioner's contention has no merit" and that he "is not being held in custody in violation of his federal constitutional rights on this claim."  Resp. Mem. at 4; <u>see also</u> <u>id.</u> at 4–14.  Respondent further contends that the Appellate Division's merits determination on this issue was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.  <u>Id.</u> at 13–14.   The Appellate Division's written decision affirming Petitioner's conviction on the merits represents the last-reasoned state court decision to address Claim 1.  <u>See</u> <u>Jean-Baptiste</u>, 858 N.Y.S.2d.  Because the state court adjudicated Claim 1 on the merits, the Court will assess the merits of this claim using the deferential AEDPA standard of review.  <u>See</u> 28 U.S.C. § 2254(d)(1)–(2).

While the Sixth Amendment right to counsel includes "the right of a defendant who does not require appointed counsel to choose who will represent him," this right "does not extend to defendants who require counsel to be appointed for them."  <u>United States v. Gonzalez-Lopez</u>, 548 U.S. 140, 144, 151 (2006) (citing <u>Wheat v. United States</u>, 486 U.S. 153, 159 (1988)); <u>see</u>

---

[12] The Court notes that Petitioner fairly presented this claim to all of the state courts, including in his letters to the Court of Appeals requesting leave to appeal.  <u>See</u> Ciganek Aff., Exs. O, P, Q.

also United States v. Parker, 469 F.3d 57, 62 (2d Cir. 2006) (noting that "it is clear that an

indigent defendant is not entitled to counsel of his or her choosing").  Accordingly, "those who

do not have the means to hire their own lawyers have no cognizable complaint so long as they

are adequately represented by attorneys appointed by the courts." Caplin & Drysdale, Chartered

v. United States, 491 U.S. 617, 624 (1989); see also Felder v. Goord, 564 F. Supp. 2d 201, 220

(S.D.N.Y. 2008) (noting that "indigent defendants do not have a veto over who is appointed to

defend them, provided that appointed counsel's representation is adequate").  Because Weiss, the

attorney Petitioner preferred, had been appointed by the court and not retained by Petitioner, and

because Petitioner does not allege that Dellicarri, the attorney who was subsequently appointed,

was ineffective, Petitioner's claim that he was deprived of his right to counsel of choice is

without merit.

     Petitioner's related claim that his absence from proceedings regarding the attorney

disqualification violated his right to be present likewise is without merit.  Due process "requires

a criminal defendant's presence 'to the extent that a fair and just hearing would be thwarted by

his absence, and to that extent only.'"  United States v. Jones, 381 F.3d 114, 121 (2d Cir. 2004)

(quoting Snyder v. Massachusetts, 291 U.S. 97, 108 (1934) (Cardozo, J.)).  In other words, a

defendant has a right to be present only when his presence would have "a relation, reasonably

substantial, to the fullness of his opportunity to defend against the charge," but not when his

presence "would be useless, or the benefit but a shadow."  Id. at 122 (quoting Snyder, 291 U.S.

at 105–06, 107).

     Even if Petitioner did have a right to counsel of choice and was interested in waiving any

conflict posed by Weiss's continued representation, any "presumption in favor of" a defendant's

counsel of choice "will be overcome by a showing of an actual conflict or a potentially serious

16

conflict." Jones, 381 F.3d at 119; accord Carncross v. Poole, 448 F. App'x 150, 152 (2d Cir.

2011) ("Although a trial court 'must recognize a presumption in favor of [a defendant's] counsel

of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict

but by a showing of a serious potential for conflict.'") (quoting Wheat, 486 U.S. at 164).

Moreover, trial courts "must be allowed substantial latitude" when determining whether to

disqualify counsel due to the existence of a conflict, including by "refusing waivers of conflicts."

Wheat, 486 U.S. at 163; see Carncross, 448 F. App'x at 152 (noting that, where actual or

potential conflict of interest exists, trial court "is afforded 'substantial latitude' in rejecting

waivers of conflicts of interest and disqualifying counsel") (quoting Wheat, 486 U.S. at 163).

 Accordingly, even if Petitioner had a right to counsel of choice, the Court would find that

the trial court acted within its discretion in disqualifying Weiss as Petitioner's counsel after

determining that Weiss's prior representation of Grant would potentially hamper Weiss's ability

to effectively cross-examine his former client at Petitioner's trial.  See Carncross, 448 F. App'x

at 152 (affirming denial of *habeas* petition and noting that petitioner's claim that trial court's

disqualification of defense counsel violated his right to counsel of choice was without merit

where "[i]nitial defense counsel represented two grand jury witnesses who provided testimony

inculpating" petitioner and "[t]here was a substantial risk" that they would be called at trial);

United States v. Fulton, 5 F.3d 605, 612 (2d Cir. 1993) ("When a lawyer's conflict, actual or

potential, may result in inadequate representation of a defendant or jeopardize the federal court's

institutional interest in the rendition of a just verdict, a trial judge has discretion to disqualify an

attorney or decline a proffer of waiver.").  Because the trial court acted within its discretion in

deciding to disqualify Weiss, and because Petitioner had no right to counsel of choice in any

event, Petitioner's absence from any proceedings related to this decision "had no relation to his

opportunity to defend himself against the [criminal] charges," particularly given that Petitioner

does not claim "that his new attorney failed to provide the requisite quality of representation, or

that this replacement had any effect on the outcome of the trial." Jones, 381 F.3d at 123.

Accordingly, Petitioner's claim that his due process right to be present was violated by the trial

court's disqualification of Weiss as counsel is without merit.

Thus, the Court finds that the Appellate Division's determination that Petitioner "was not

deprived of his right to counsel of his choice or of his right to be present at all material stages of

his trial," Jean-Baptiste, 858 N.Y.S.2d at 388, was neither contrary to, nor involved an

unreasonable application of, clearly established federal law. See Williams, 529 U.S. at 412–13.

Claim 1 must therefore be denied.

2.   *Right to a Fair Trial (Claim 2)*

Petitioner argues that he "did not receive a fair trial" due to "errors that in combination

affected the fairness of the trial so significantly that they require reversal." Pet. Mem. at 9; see

also id. at 9–25.  These errors include (1) "a highly prejudicial error in application of the hearsay

rule to 'motive' evidence and related errors during instructions to jurors," and (2) "the misuse of

'expert' evidence which interfered with the jury's right and obligation to independently evaluate

such evidence." Id. at 9–10.  The Court liberally construes Petitioner's allegations as claiming

that the cumulative effect of these alleged trial errors violated his federal due process right to a

fair trial.  See, e.g., Taylor v. Kentucky, 436 U.S. 478, 487 n.15 (1978) (concluding that "the

cumulative effect of the potentially damaging circumstances of this case violated the due process

guarantee of fundamental fairness in the absence of an instruction as to the presumption of

innocence"); Chambers v. Mississippi, 410 U.S. 284, 289–90, 290 n.3, 303 (1973) (holding that

"under the facts and circumstances of this case the rulings of the trial court deprived [petitioner]

of a fair trial" where petitioner claimed that "cumulative impact" of trial court's evidentiary rulings "rendered his trial fundamentally unfair and deprived him of due process of law"); United States v. Yousef, 327 F.3d 56, 161 (2d Cir. 2003) (noting that Second Circuit has "recognized" claims that "the cumulative effect of all . . . trial errors denied [defendant] his right to a fair trial"); Evans v. Fischer, 816 F. Supp. 2d 171, 186 (E.D.N.Y. 2011) ("The Supreme Court has    . . . specifically held . . . that the cumulative effect of evidentiary trial errors under the unique facts and circumstances of a particular case can deprive a criminal defendant of the due process guarantee of a fair trial") (citing Chambers, 410 U.S.).

Respondent argues that Petitioner failed to exhaust—and therefore procedurally defaulted on—this claim in state court because "nothing in [his] presentation of [this] claim[] on direct appeal suggested that a federal constitutional error was being alleged."  Resp. Mem. at 3; see also id. at 2–4.  Alternatively, Respondent argues that this claim does not "raise[] a constitutional issue that is cognizable in a habeas corpus petition" and that this claim is "without merit."  Id. at 15; see also id. at 15–23.

While the heading for Petitioner's direct appeal argument on this issue claimed that "a cumulation of errors during [his] trial rendered the trial fundamentally unfair," Pet. App. Br. at 33 (typeface altered from original), his argument proceeded to challenge each of the trial court's allegedly erroneous evidentiary rulings and related instructions individually on state evidentiary law grounds, and not on federal constitutional grounds.  See id. at 33–52.  At the conclusion of these arguments, Petitioner articulated his cumulative errors claim and, relying on New York state case law, he argued as follows:

> Each of the errors set forth above may not on its own have been able to survive harmless error analysis, but cumulatively they so impacted the fairness of the appellant's trial, and undermined the jury's determination of guilt, that due

> process requires that [Petitioner] be given another trial—not necessarily an error-free trial, but at the least one that is not error-laden.

Pet. App. Br. at 52–53 (internal citations omitted). In ruling on Petitioner's direct appeal on this issue, the Appellate Division held that the trial court properly admitted testimony regarding Petitioner's motive "under the 'state-of-mind' exception to the hearsay rule" and that Petitioner's "contentions regarding other alleged trial errors are also without merit." Jean-Baptiste, 858 N.Y.S.2d at 389. The Appellate Division made no reference to any potential "fair trial" or "due process" claim in its opinion. See id. In his letter requesting leave to appeal, Petitioner presented this claim to the Court of Appeals as a challenge to "a group of errors all involving the erroneous admission of evidence that in no way could be considered harmless error as, without the improperly admitted evidence, it is likely the outcome of the trial would have been different." Ciganek Aff., Ex. O at 1, 3–4 (also arguing that erroneously admitted evidence was "highly prejudicial").

As noted above, a petitioner need not cite "chapter and verse of the Constitution" in order to exhaust his claim; rather, he may fairly present the federal nature of his claim to the state courts in one of several ways. See Daye, 696 F.2d at 194. The Court finds, however, that Petitioner failed to adequately present his claim to the state courts in any of these ways. First, Petitioner's argument on appeal was devoid of reference to "pertinent federal cases employing constitutional analysis." Daye, 696 F.2d at 194; see Pet. App. Br. at 33–53. Indeed, Petitioner referenced only one federal case in this section of his appellate brief, and he cited this case only for the proposition that "instructions to disregard inadmissible evidence are 'recommendations . . . of a mental gymnastic which is beyond, not only their powers, but anybody else's.'" See Pet. App. Br. at 43–44 (quoting Nash v. United States, 54 F.2d 1006 (2d Cir. 1932) (Hand, J.)).

20

While <u>Nash</u> considers the prejudicial effect of alleged trial errors pursuant to federal evidentiary law, it does not engage in constitutional analysis.[13] <u>See Nash</u>, 54 F.2d.

Second, Petitioner did not rely on "state cases employing constitutional analysis in like fact situations." <u>Daye</u>, 696 F.2d at 194.  As noted above, Petitioner's direct appeal brief argued that the trial court's admission of hearsay evidence relating to motive and particular testimony by the firearms examiner and medical examiner, respectively, "in combination affected the fairness of the trial so significantly that they require reversal." Pet. App. Br. at 33.  Petitioner's brief addressed each of these alleged errors separately and challenged the court's rulings on these issues based on state evidentiary law.  <u>See id.</u> at 33–48 (regarding "admission of improper evidence of motive, and erroneous instructions to jurors regarding motive and the hearsay rule as they related to that evidence"), 48–52 (regarding "misuse of 'expert' evidence which interfered with the jury's right and obligation to independently evaluate such evidence").  The state court decisions cited by Petitioner in support of these arguments were rendered on the basis of state evidentiary law.  <u>See id.</u> at 33–52 (citing <u>Tyrrell v. Wal-Mart Stores</u>, 97 N.Y.2d 650 (2001); <u>People v. Casey</u>, 95 N.Y.2d 354 (2000); <u>Schozer v. William Penn Life Ins. Co.</u>, 84 N.Y.2d 639 (1994); <u>People v. Jones</u>, 73 N.Y.2d 427 (1989); <u>People v. Nieves</u>, 67 N.Y.2d 125 (1986);[14] <u>People v. Giuliano</u>, 65 N.Y.2d 766 (1985); <u>People v. Ready</u>, 61 N.Y.2d 790 (1984);[15] <u>People v.</u>

---

[13] In opposition to Petitioner's direct appeal argument on this issue, Respondent also did not cite to any federal cases employing constitutional analysis. <u>See</u> Resp. App. Br. at 25–33.

[14] In considering a challenge to a trial court's admission of hearsay evidence, the court in <u>Nieves</u> referenced the Sixth Amendment right to confront witnesses. <u>See Nieves</u>, 67 N.Y.2d at 131. Petitioner, however, has raised no such claim in his Petition.

[15] The Court notes that <u>Ready</u> considered an allegedly unlawful search and, in that context, referenced one Supreme Court opinion regarding the Fourth Amendment. <u>See Ready</u>, 61 N.Y.2d at 793. Petitioner, however, has alleged no violation of his Fourth Amendment rights.

Thomas, 46 N.Y.2d 100 (1978);[16] People v. Woolfolk, 37 N.Y.2d 766 (1975); People v. Namer, 309 N.Y. 458 (1956); People v. Bretagna, 298 N.Y. 323 (1949); People v. Weiss, 290 N.Y. 160 (1943); People v. Perry, 277 N.Y. 460 (1938); People v. Molineux, 168 N.Y. 264 (1901); People v. Fitzgerald, 156 N.Y. 253 (1898); People v. Owens, 148 N.Y. 648 (1896); People v. Chacon, 102 N.Y. 669 (1886); People v. Bennett, 49 N.Y. 137 (1872); People v. Mestres, 838 N.Y.S.2d 164 (App. Div. 2007);[17] Abbe v. Bd. of Educ., 587 N.Y.S.2d 707 (App. Div. 1992); People v. Simmons, 487 N.Y.S.2d 396(App. Div. 1985)).[18]

As noted above, at the conclusion of the trial errors section of his appeal brief, Petitioner argued that, while "[e]ach of the errors set forth above may not on its own have been able to survive harmless error analysis, . . . cumulatively they so impacted the fairness of the appellant's trial, and undermined the jury's determination of guilt, that due process requires that [Petitioner] be given another trial." Id. at 52 (internal citation omitted). In support of this proposition, Petitioner cited four New York state court cases that consider the question of whether alleged trial errors cumulatively deprived a defendant of his right to a fair trial.[19] See id. at 52–53.

---

[16] While Thomas discusses the Fifth Amendment privilege against self-incrimination, see Thomas, 46 N.Y.2d at 106–08, Petitioner has not raised any claim in his Petition implicating this right.

[17] Petitioner's appeal brief cited to the Appellate Division's slip opinion. See Pet. App. Br. at 40 (citing Mestres, 2007 N.Y. Slip Op. 5297 (App. Div. June 12, 2007)).

[18] While the court in Simmons referenced a defendant's "right to a fair trial," see Simmons, 487 N.Y.S.2d at 400, it did not engage in any federal constitutional analysis on this issue. While the court referenced a Supreme Court case on the unrelated issue of a defendant's Sixth Amendment right to effective assistance of counsel, see id. at 399, Petitioner has raised no such claim in his Petition.

[19] The Court notes that, at the outset of this section of his direct appeal brief, Petitioner cited to two additional New York state cases for the basic proposition that defendants are entitled to a fair trial. See Pet. App. Br. at 33 (citing People v. White, 57 N.Y.2d 129 (1982)), and People v. Gorghan, 787 N.Y.S.2d 178 (App. Div. 2004)). While these cases reference a

Three of these cases do not engage in—or even reference—federal constitutional analysis, but instead rely solely on pertinent New York state case law addressing this issue. See People v. Calabria, 94 N.Y.2d 519, 522–23 (2000) (determining on basis of state law that "prosecutor's conduct throughout the trial cumulatively denied defendant the right to a fair trial"); People v. Wlasiuk, 821 N.Y.S.2d 285, 287–92 (App. Div. 2006) (concluding on basis of state law that "cumulative effect of a litany of errors," including admission of evidence of defendant's prior bad acts, admission of hearsay evidence, the manner in which a police report was presented to the jury, and prosecutorial misconduct, "deprived defendant of a fair trial"); People v. Baranek, 733 N.Y.S.2d 704, 707, 710 (App. Div. 2001) (concluding on basis of state law that "defendant was denied a fair trial by the cumulative effect" of trial court errors that prevented defendant from cross-examining complainant about her psychiatric history, introducing complainant's psychiatric records, or calling expert to testify about complainant's psychiatric condition, because "[t]hese errors cannot be deemed harmless under the circumstances of this case").[20]

Petitioner's citation to People v. Crimmins, 36 N.Y.2d 230 (1975), presents a closer question on exhaustion than do his citations to the three cases previously discussed. In Crimmins, the Court of Appeals determined that a comment made by a prosecutor "in summation with respect to defendant's failure to testify on her own behalf was improper and constituted constitutional error" after it considered whether this error "was harmless under the

_____

defendant's right to a fair trial, neither engages in federal constitutional analysis. See White, 57 N.Y.2d; Gorghan, 787 N.Y.S.2d.

[20] The Court notes that, while Baranek cites to the United States Constitution and Supreme Court cases for the proposition that the "right of an accused to confront the witnesses against him or her through cross-examination is a fundamental right of constitutional dimension," Baranek, 733 N.Y.S.2d at 708, Petitioner has neither cited to this portion of the court's opinion nor raised this federal constitutional right in his Petition.

test for harmless constitutional error laid down by the Supreme Court of the United States." Crimmins, 36 N.Y.2d at 237.  In considering the question of harmless error, the court in Crimmins referenced the "parallel, and in some instances . . . overlapping doctrine" of the "cardinal right of a defendant to a fair trial," but noted that "[t]here is no predicate [in this case] . . . for any claim that this defendant . . . was deprived" of this "basic right" and therefore "this case present[ed] no appropriate instance for its application."  Id. at 237–38.

Some courts have found that a *habeas* petitioner's reference to Crimmins in an appeal brief in a similar factual context was sufficient to alert the state courts of a federal constitutional claim.  See Daye, 696 F.2d at 195–96 (finding that federal constitutional nature of petitioner's fair trial claim based on trial judge's alleged impartiality was fairly presented to state courts where petitioner cited to Crimmins and another New York state case on direct appeal and "[u]nder the Due Process Clause there is a well developed right, established in a long line of cases, to a trial before an unbiased judge"); Guerrero v. Artuz, No. 00 Civ. 2305 (AKH), 2002 WL 619576, at *2 (S.D.N.Y. Apr. 17, 2002) (holding that "petitioner's brief on direct appeal was . . . adequate to apprise the Appellate Division of the constitutional nature of petitioner's argument that the prosecutor's improper remarks in summation deprived petitioner of a fair trial" where petitioner's brief claimed that the "cumulative effect" of these remarks deprived petitioner of his right to a fair trial and cited Crimmins, "in which the Court of Appeals expressly discussed federal constitutional standards for assessing error at trial").[21]  Here, however, Petitioner did not cite to Crimmins in a similar factual context, but rather in the context of his challenge to allegedly erroneous evidentiary rulings—specifically, the trial court's improper admission of

---

[21] Copies of unreported cases cited herein will be mailed to Petitioner.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

hearsay evidence regarding motive and prejudicial expert testimony. Moreover, Petitioner cited to <u>Crimmins</u> not for the proposition that he was denied a fair trial, but rather for the proposition that, while "[e]ach of the errors" identified by Petitioner "may not on its own have been able to survive harmless error analysis," Pet. App. Br. at 52 (citing <u>Crimmins</u>, 36 N.Y.2d), these errors "cumulatively . . . impacted the fairness" of Petitioner's trial, <u>id.</u> (citing <u>Calabria</u>, 94 N.Y.2d; <u>Wlasiuk</u>, 821 N.Y.S.2d; <u>Baranek</u>, 733 N.Y.S.2d).[22]

The Court is unable to conclude that Petitioner's citation to <u>Crimmins</u> on the issue of harmless error in the context of a claim based on erroneous evidentiary rulings was sufficient to alert the state courts of the federal nature of his fair trial claim. <u>See</u> <u>Porter v. Greiner</u>, No. CV 00-6047 (SJ) (VVP), 2005 WL 3344828, at *12 n.12 (E.D.N.Y. Nov. 18, 2005) (noting that petitioner's citation to <u>Crimmins</u> on direct appeal "only for the proposition that the [alleged trial court] error was not harmless" was insufficient to exhaust federal claim related to this error because, "[a]s other courts in this circuit have held, citing <u>Crimmins</u> in the harmless error context is not sufficient to alert the state courts to the constitutional nature of Petitioner's claim") (Report and Recommendation); <u>Canteen v. Kelly</u>, No. 86 Civ. 3951 (MJL), 1989 WL 116287, at *5 n.3 (S.D.N.Y. Sept. 27, 1989) (noting that petitioner's citation to <u>Crimmins</u> was insufficient to exhaust federal claim because, while <u>Crimmins</u> "contains an extensive discussion of the constitutional standards for a fair trial," it "does not concern the constitutional impact of the admission of a hearsay declaration" and was cited on direct appeal "only for the proposition that the claimed evidentiary error was not harmless"); <u>see also</u> <u>Reese v. Alexander</u>, 37 F. App'x 5, 7–8 (2d Cir. 2002) (finding that petitioner's direct appeal brief "presented his claim regarding

---

[22] Respondent also cited to <u>Crimmins</u> in opposition to Petitioner's direct appeal brief. <u>See</u> Resp. App. Br. at 32. Respondent quoted language from <u>Crimmins</u> regarding the standard for harmless error. <u>See id.</u> (citing <u>Crimmins</u>, 36 N.Y.2d at 242).

the exclusion [of certain evidence] as one of state evidence law, relying exclusively on state

cases" and therefore did not exhaust his fair trial claim even though state's opposition brief cited

to <u>Crimmins</u> for proposition that "any error was harmless and did not deprive defendant of a fair

trial" because "invocation of the concept of harmless error is insufficient to alert the state courts

to petitioner's specific claim that the exclusion . . . unconstitutionally denied him the opportunity

to present a defense") (internal quotation marks omitted); <u>Loney v. N.Y. State Dep't of Corr.</u>,

632 F. Supp. 2d 337, 347–48, 348 n.6 (S.D.N.Y. 2009) (finding that federal nature of petitioner's

due process claim arising out of improper admittance of evidence at trial was not fairly presented

to state courts even where he cited to <u>Crimmins</u> on direct appeal because he "did not claim that

the trial court deprived him of his fundamental right to a fair trial" and, while <u>Crimmins</u>

"discusses the federal Constitution," petitioner's brief "cites to the non-constitutional standard

discussed in the case, rather than the constitutional standard"); <u>Glisson v. Mantello</u>, 287 F. Supp.

2d 414, 420 (S.D.N.Y. 2003) (noting that petitioner's "brief reference in his state court briefs to

<u>Crimmins</u> . . . to set forth New York's harmless error standard did not give the Appellate

Division any notice that a federal constitutional issue was being raised regarding the Trial

Court's interruption of defense counsel's opening statement"); <u>Mercado v. Henderson</u>, 733 F.

Supp. 19, 22 (S.D.N.Y. 1990) (noting that, "[i]n <u>Crimmins</u>, the New York Court of Appeals

discussed harmless error under the federal Constitution and the decisional law of New York" and

that "[i]ts citation in petitioner's case by the state cannot be deemed to have alerted the Appellate

Division that petitioner here was raising a federal constitutional claim about allegedly defective

jury instructions").

  Third, while Petitioner's appeal brief referenced "due process" and his right to a "fair

trial," Pet. App. Br. at 33, 52, these references are insufficient to support a finding that Petitioner

fairly presented this claim to the state courts. "[A] mere statement that 'due process' rights have been violated does not necessarily give rise to a specific federal constitutional claim." Petrucelli, 735 F.2d at 688. Indeed, "'[d]ue process,' like 'fair trial,' can be a catchphrase used by habeas petitioners as part of an allegation about any type of trial court error, including errors in rulings based on state law." Id.; accord Daye, 696 F.2d at 193 (noting that "the greatest difficulty arises when in the state court the petitioner has described his claim in very broad terms, such as denial of a 'fair trial'" and that "[o]bviously not every event in a criminal proceeding that might be described as 'unfair' would be a violation of the defendant's rights under the Constitution"); Washington v. Conway, No. 06 CV 13520 (LAP) (RLE), 2009 WL 3444956, at *3 (S.D.N.Y.) ("Mere references to 'due process' and 'fair trial' are insufficient if the argument rests on issues of state law.") (Report and Recommendation), adopted by 2009 WL 3444956 (S.D.N.Y. Oct. 23, 2009). Moreover, Petitioner's letter to the Court of Appeals requesting leave to appeal does not even reference "due process" or his right to a "fair trial," but rather simply asserts that the allegedly erroneous evidentiary rulings of the trial court were highly prejudicial and not harmless. See Ciganek Aff., Ex. O.

Finally, Petitioner's "pattern of facts" is not so "mainstream," Daye, 696 F.2d at 194, as to have called to mind federal constitutional issues of due process. Indeed, a claim based on a state court's evidentiary ruling, which itself is founded on state law, is "not 'commonly thought to involve constitutional constraints.'" Martinez v. Artuz, No. 99 Civ. 12280 (LMM) (RLE), 2002 WL 1000287, at *4 (S.D.N.Y. May 13, 2002) (quoting Daye, 696 F.2d at 193) (Report and Recommendation), adopted by 2002 WL 31008139 (S.D.N.Y. Sept. 5, 2002); see also Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006) (noting that "'habeas corpus relief does not lie for errors of state law,' and that necessarily includes erroneous evidentiary rulings") (internal

citation omitted) (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)); <u>Daye</u>, 696 F.2d at 193

("[A] defendant's claim that he was deprived of a fair trial because of the admission in evidence

of a statement objectionable as hearsay would not put the court on notice that the defendant

claimed a violation of his constitutional right to be confronted by his accusers.").  While

Petitioner's appeal brief argued that the cumulative effect of alleged trial errors rendered his trial

"fundamentally unfair," Pet. App. Br. at 33, it primarily challenged the "trial court's routine

determinations of evidentiary challenges involving relevance and hearsay" under state law and

accordingly did not present a pattern of facts well within the mainstream of federal constitutional

law.  <u>Mercado v. Lempke</u>, No. 07 Civ. 9865 (VB) (PED), 2011 WL 5223604, at *14 (S.D.N.Y.

July 25, 2011) (Davison, J.) (Report and Recommendation), <u>adopted by</u> 2011 WL 6122290

(S.D.N.Y. Dec. 7, 2011); <u>see also</u> <u>Daye</u>, 696 F.2d at 193 (noting that "[i]f . . . [fair trial] claim is

based on a fact pattern not theretofore commonly thought to involve constitutional constraints,

there is usually little reason to believe the courts were alerted to its supposed constitutional

nature").

 Accordingly, because Petitioner failed to present the federal nature of his fair trial claim

to the state courts, the Court finds that Petitioner failed to exhaust this claim.  <u>See</u> <u>Jimenez v.</u>

<u>Walker</u>, 458 F.3d 130, 148 (2d Cir. 2006) (finding that petitioner did not fairly present to state

courts his claim that "cumulative trial-court error produced a trial setting that was fundamentally

unfair, thereby depriving him of his constitutional right to due process"); <u>Mercado</u>, 2011 WL

5223604, at *12–14 (finding that petitioner's direct appeal briefs had "not fairly presented to the

state courts" the "federal constitutional nature of" his "fair trial claims involving evidentiary

rulings") (typeface altered from original); <u>Marji v. Rock</u>, No. 09 Civ. 2420 (CS) (PED), 2011

WL 4888832, at *13–14 (S.D.N.Y. July 19, 2011) (Davison, J.) (noting that "[c]umulative error

claims—like other claims—must be fairly presented to all appropriate state courts before *habeas*

review can proceed" and that, where "Petitioner has not presented the state courts with this

argument in constitutional terms, it remains unexhausted") (Report and Recommendation),

adopted by 2011 WL 4888829 (S.D.N.Y. Oct. 13, 2011).

Although Petitioner did not exhaust this federal due process claim in the state courts, this

record-based claim may be deemed exhausted because Petitioner may not raise it again in state

court. See N.Y. Crim. Proc. Law § 440.10(2)(c) (claims adequately based in the record but not

argued on direct appeal must be denied when raised in post-conviction motion); see also Reese,

37 F. App'x at 8 ("[H]aving previously presented the factual basis for this claim to the New

York courts on direct appeal, petitioner is barred from bringing the claim again in an application

for post-conviction relief under . . . [§] 440.10 . . . ."). As noted above, this Court may

circumvent Petitioner's procedural default and review the claim only upon a showing of cause

and prejudice or a fundamental miscarriage of justice. See Reese, 37 F. App'x at 8. Because

Petitioner does not assert either, such a claim must be denied.

Even if the Court found that Petitioner had exhausted this claim, however, and even if the

Court also accepted Petitioner's assertion that the state court erred in admitting the evidence to

which Petitioner has objected, "the Court would still find that the admission of this evidence did

not violate due process." Loney, 632 F. Supp. 2d at 348.

> The standard for a due process violation regarding an evidentiary claim is a high
> one; a court should ask 'whether the erroneously admitted evidence, viewed
> objectively in light of the entire record before the jury, was sufficiently material
> to provide the basis for conviction or to remove a reasonable doubt that would
> have existed on the record without it. In short it must have been crucial, critical,
> highly significant.

Id. (internal quotation marks omitted) (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir.

1985)); see also Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) ("The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'") (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)), abrogated on other grounds by Perry v. New Hampshire, 132 S. Ct. 716 (2012).

Here, Petitioner objects to the trial court's allegedly improper admission of (1) hearsay evidence regarding his motive, (2) the firearms examiner's testimony regarding a photocopy of a photograph of bullet casings and the related showing of this photocopy to the jury, and (3) the medical examiner's testimony regarding the likely position of the shooter. Petitioner also objects to the trial court's related instructions to the jury on these issues. In light of the entire record before the jury in this case—including the testimony of three eyewitnesses to the crime—the Court would conclude that the evidence to which Petitioner objects, whether considered individually or cumulatively, "was not sufficiently material to provide the basis of conviction, and its admission did not violate due process." Loney, 632 F. Supp. 2d at 349; accord Marji, 2011 WL 4888829, at *2 ("Petitioner has not demonstrated that the alleged evidentiary errors to which he points, considered individually or cumulatively, rendered his trial so extremely unfair that the state court's affirmation of his conviction amounts to an unreasonable application of Supreme Court precedent."); see also Chappero v. West, No. 04 CV 8018 (KMW) (DCF), 2009 WL 2058534, at *26 (S.D.N.Y. July 15, 2009) (noting that, "in light of . . . eyewitness testimony" at petitioner's trial, "it cannot be said that the admission of [expert] ballistics evidence [challenged by petitioner] fatally infected the conduct of the trial, rendering the trial so unfair as to violate Petitioner's due process rights"); Kotler v. Woods, 620 F. Supp. 2d 366, 392–93 (E.D.N.Y. 2009) (determining that, "even assuming *arguendo* that the

introduction of [challenged hearsay] statements violated New York State law, such error did not, in light of the entire record, deprive petitioner of his constitutional right to a fundamentally fair trial" where "evidence of [petitioner's] guilt . . . was overwhelming").

Accordingly, Claim 2 must be denied.

3.    *Weight of the Evidence (Claim 3)*

Finally, Petitioner argues that the jury's verdict was against the weight of the evidence. See Pet. Mem. at 25–32.  Respondent contends that this claim is not cognizable on *habeas* review because it does not present a federal constitutional issue, but rather is grounded in state law.  See Resp. Mem. at 23–26.  Respondent also argues that Petitioner failed to exhaust this claim in state court and that this claim is now procedurally defaulted.  See id. at 2–4.

It is well-established that a weight of the evidence claim is exclusively a matter of state law and does not present a federal question.  See, e.g., McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus . . . ."), cert. denied sub nom. McKinnon v. LaValley, 132 S. Ct. 1151 (2012); Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (noting that weight of evidence claim is state law claim arising under N.Y. Criminal Procedure Law § 470.15[23] and therefore

-------------------

[23] "Upon an appeal to an intermediate appellate court from a judgment . . . , such intermediate appellate court may consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant." N.Y. Crim. Proc. Law § 470.15(1). "A reversal or a modification of a judgment . . . , must be based upon a determination made . . . [u]pon the law; . . . [u]pon the facts; . . . [a]s a matter of discretion in the interest of justice; or . . . [u]pon any two or all three of the bases specified [above]." Id. § 470.15(3). "The kinds of determinations of reversal or modification deemed to be on the facts include, but are not limited to, a determination that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." Id. § 470.15(5).

does not present federal question); <u>Douglas v. Portuondo</u>, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002) (noting that weight of evidence claim is "error of state law, for which habeas review is not available"); <u>see also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996) (noting that "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal").

Moreover, Petitioner plainly failed to exhaust this claim in state court as his request for leave to appeal expressly disclaimed any request that the Court of Appeals review this issue.  <u>See</u> Ciganek Aff., Ex. O at 5 (noting that weight of evidence claim was "question[] of fact" and "thus [was] not included in this application"); <u>see also</u> <u>Jordan v. Lefevre</u>, 206 F.3d 196, 198–99 (2d Cir. 2000) (noting that, when application for leave to appeal identifies specific claims, those grounds not mentioned in letter are not "fairly presented" to state's highest court).  Although Petitioner failed to exhaust this claim by presenting it in his request for leave to appeal, it may be deemed exhausted and procedurally defaulted because Petitioner is now unable to raise it in state court through collateral motion.  <u>See</u> N.Y. Crim. Proc. Law § 440.10(2)(c) (claims adequately based in the record but not argued on direct appeal must be denied when raised in post-conviction motion); <u>Figueroa v. Kelly</u>, No. 95 Civ. 0216 (HB), 1995 WL 702327, at *1–2 (S.D.N.Y. Nov. 29, 1995) ("If a petitioner limits the issues to be reviewed in a letter application to the New York Court of Appeals, the other claims presented in his or her Appellate Division brief are not deemed exhausted" but "should be deemed procedurally forfeited for purposes of federal habeas review where the petitioner is now procedurally barred from presenting those claims to the state court.").  Petitioner does not allege cause and prejudice or a fundamental

miscarriage of justice to overcome this procedural default.

Because Petitioner failed to exhaust his weight of the evidence claim, and because this claim is not cognizable on *habeas* review in any event, Claim 3 must be denied.

## IV.  **CONCLUSION**

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the Petition should be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

## V.  **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Edgardo Ramos, at the Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Ramos.

Dated: June 19, 2012
      White Plains, New York

                                  Respectfully submitted,

                                  Paul E. Davison
                                  United States Magistrate Judge
                                  Southern District of New York


A copy of the foregoing Report and Recommendation has been sent to the following:

      The Honorable Edgardo Ramos
      The Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse
      300 Quarropas St.
      White Plains, NY 10601

      Pochly Jean-Baptiste, *pro se*
      05-A-0274
      Clinton Correctional Facility – Route 374
      Cook Street, P.O. Box 2001
      Dannemora, NY 12929

      Pochly Jean-Baptiste, *pro se*
      05-A-0274
      Auburn Correctional Facility – 135 State Street
      P.O. Box 618
      Auburn, NY 13021[24]

      Carrie Anne Ciganek
      Office of the District Attorney of Rockland County
      County Office Building
      1 S. Main Street, Suite 500
      New City, NY 10956

---

[24] While the docket indicates that Petitioner is housed at Clinton Correctional Facility, the website for the New York State Department of Corrections and Community Supervision indicates that he is now housed at Auburn Correctional Facility.